IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MEDPORT, INC., )
 )
 Plaintiff, )
 )
 v. ) 1:11CV766
 )
H. FRANKLIN GREEN, )
 )
 Defendant. )

**ORDER**

Pending before this court is a Motion for Entry of Default Judgment filed by Plaintiff, Medport, Inc. (Doc. 9). Plaintiff seeks compensatory damages in the amount of $70,000. Of the $70,000 in claimed damages, $45,000 arises from Defendant's alleged improper release of funds held in trust. Specifically, Plaintiff alleges that Defendant released $45,000 to a third party, MH Holdings, Inc. ("MH Holdings"), prior to the satisfaction of certain conditions precedent. The remaining $25,000 in claimed damages arises from MH Holdings' failure to pay the amount due under a stock option agreement. For the following reasons, this court will grant the motion for default judgment as to the $45,000, but will deny relief as to the $25,000. This court will also award Plaintiff $45,000 in punitive damages.

## I. BACKGROUND

The relevant facts are set forth in the complaint, the affidavit of William E. West, Jr., and the affidavit of Marc Hubbard and will not be set forth again here except as necessary for purposes of this order.

Plaintiff contends that it entered into an agreement to loan $45,000 to a third party, MH Holdings. Plaintiff alleges that as part of the consideration for that loan, MH Holdings agreed to pay Plaintiff $25,000 for an option to purchase 50 shares of stock in Medport, Inc., subject to certain terms and conditions. The $45,000 loan was to be in the form of a demand note that would be secured by a mortgage to property allegedly owned by Marc Hubbard, owner of MH Holdings.

After agreeing to the above deal with Plaintiff, Marc Hubbard contacted Defendant, H. Franklin Green, an attorney in Washington, D.C., and asked him to "handle the matter for me." (Aff. of Marc Hubbard (Doc. 19) at 3). Both parties appear to agree that Defendant was engaged to represent MH Holdings.

According to Plaintiff, Plaintiff wired the $45,000 for the loan to Defendant and instructed Defendant that the funds were not to be disbursed to Marc Hubbard without certain conditions having first been met. (See Pl.'s Br. in Supp. of Mot. for Default J. (Doc. 10) at 3.) Those conditions included "the execution of [Promissory Note] and [Option to Purchase Stock], together with

-2-

the execution, recording, and delivery of a mortgage against the property . . . which constituted a first lien against such property." (Aff. of William E. West, Jr. (Doc. 9-1) ¶ 7.) Notably, Plaintiff does not allege that Defendant was instructed to collect the $25,000 payment for the stock option, only that Defendant was instructed not to release the $45,000 before Defendant had in his possession the executed Option contract.

## II. STANDARD OF REVIEW

In reviewing a motion for default judgment, a court "must (1) determine whether the unchallenged facts in plaintiffs' Complaint constitute a legitimate cause of action, and, if they do, (2) make an independent determination regarding the appropriate amount of damages." Trs. of the Operating Eng'rs Trust Fund v. GDS Equip. Rental, Inc., No. ELH-11-2646, 2012 U.S. Dist. LEXIS 90717, at *10 (D. Md. June 29, 2012)(citing Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780-81 (4th Cir. 2001)).

## III. ANALYSIS

Plaintiff has set forth two claims for relief: (1) breach of fiduciary duty and (2) fraud. In its fiduciary duty claim, Plaintiff contends that with regard to the funds wired to Defendant, Defendant was a voluntary trustee of those funds, and he was thus obligated not to disburse them to anyone without complying with the express instructions given to him by Plaintiff.

-3-

By disbursing the funds in question to Hubbard without first obtaining the execution of the promissory note, option agreement, and a mortgage constituting a first lien against the South Carolina property, Defendant clearly breached the fiduciary obligation he owed to Plaintiff as a voluntary trustee of the funds delivered to him.

In the absence of an Answer denying the pertinent allegations, this court finds that Defendant was acting in the role of trustee, subject to the conditions agreed to by Plaintiff and Defendant. Based upon the evidence submitted, however, this court finds that Plaintiff is only entitled to recover the $45,000 it transferred to Defendant and not the full $70,000 sought in Plaintiff's complaint.

> For a breach of contract the injured party is entitled as compensation therefor to be placed, insofar as this can be done by money, in the same position he would have occupied if the contract had been performed. The amount that would have been received if the contract had been kept and which will completely indemnify the injured party is the true measure of damages for the breach.

Perfecting Serv. Co. v. Prod. Dev., 259 N.C. 400, 415, 131 S.E.2d 9, 21 (1963).

In this case, Plaintiff's evidence clearly establishes that Mr. Hubbard did not own an interest in property sufficient to provide a security interest, and there is no evidence that Mr. Hubbard could have provided the negotiated-for security interest

-4-

in some other manner.  Under these circumstances, this court is not able to find that it would have been possible for MH Holdings to meet the conditions precedent for disbursement of the $45,000.

This court therefore finds that, with respect to Defendant, Plaintiff's loss is predicated solely on Defendant's failure to return the $45,000 that Plaintiff wired to Defendant to hold in trust.  Had Defendant properly performed his duties under the trust contract, Defendant would have been obligated to return Plaintiff's funds if MH Holdings had been unable to satisfy the conditions precedent to the funds' disbursement.  Under this scenario, Plaintiff would never have received the $25,000 from Defendant or MH Holdings.  Defendant would have simply returned the $45,000 to Plaintiff and the agreement would have been terminated.  Furthermore, there is no evidence that MH Holdings would have delivered the $25,000 by June 1, 2011, even if he had signed the stock option agreement.  Nor is there any evidence that Plaintiff could have pursued an action for breach of contract against MH Holdings that would have resulted in a satisfied judgment, as there is no evidence that MH Holdings could or would have paid if the contract had been executed.  This court therefore finds Plaintiff to have only established that Defendant has caused damage by releasing the $45,000 to MH Holdings instead of returning those funds to Plaintiff once it became clear MH Holdings could not, or would not, perform on the agreement.

Plaintiff also seeks punitive damages against Defendant. (See Complaint ("Compl.") (Doc. 1) at 10-12.)  N.C. Gen. Stat. § 1D-1 provides that "[p]unitive damages may be awarded . . . to punish a defendant for egregiously wrongful acts and to deter the defendant and others from committing similar wrongful acts."  N.C. Gen. Stat. § 1D-15(a) further provides that:

> Punitive damages may be awarded only if the claimant proves that the defendant is liable for compensatory damages and that one of the following aggravating factors was present and was related to the injury for which compensatory damages were awarded:
>
> (1) Fraud.
> (2) Malice.
> (3) Willful or wanton conduct.

"The claimant must prove the existence of an aggravating factor by clear and convincing evidence."  Id. at § 1D-15(b).

Plaintiff has alleged that "Defendant and Hubbard conspired to provide Plaintiff with a title opinion on the property in question rendered by an attorney from Spartanburg, South Carolina named Randy Wilkes."  (Pl.'s Br. in Supp. of Mot. for Default J. (Doc. 10) at 4.)  Plaintiff claims that Defendant's actions in this regard amount to fraud because (1) Randy Wilkes is not a licensed attorney in South Carolina; (2) despite Defendant's representations, Hubbard does not own the property in fee simple; and (3) Defendant's actions were material to Plaintiff's decision to go forward with the agreement because Defendant led Plaintiff to believe that "Hubbard was able to secure fully his indebtedness

-6-

to Plaintiff by a first mortgage against the property." (Id.) This court agrees with Plaintiff's characterization of these events and finds that Defendant's conduct warrants an award of punitive damages. This court also notes that North Carolina courts have awarded punitive damages in instances where trustees have either wrongfully held or wrongfully disbursed funds contrary to the terms of a trust agreement. See Babb v. Graham, 190 N.C. App. 463, 477, 660 S.E.2d 626, 635-36 (N.C. Ct. App. 2008); Ingle v. Allen, 69 N.C. App. 192, 198-99, 317 S.E.2d 1, 4-5 (N.C. Ct. App. 1984). This court finds an award of $45,000 in punitive damages to be appropriate in this instance.

**IV. CONCLUSION**

For all of the reasons stated above,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Entry of Default Judgment (Doc. 9) is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff be awarded $45,000 in compensatory damages and $45,000 in punitive damages. A Judgment consistent with this opinion will be entered contemporaneously with this order.

This the 18th day of July, 2012.

                                     /s/ William L. Osteen, Jr.
                                          United States District Judge